1

2

3

4

5

6                        UNITED STATES DISTRICT COURT

7                              DISTRICT OF NEVADA

8                                    * * *

9    GODSON ERUCHALU,                     Case No. 2:12-cv-01264-MMD-VCF

10                          Plaintiff,
                                          ORDER
11       v.
                                          (Plf's Motions to Admit Evidence
12   U.S. BANK, NATIONAL ASSOCIATION;        – dkt. nos. 56, 96;
     U.S. BANK HOME MORTGAGE; U.S.        Def.s' Motion to Dismiss – dkt. no. 57)
13   BANK HOME MORT OUTSOURCING;
     NATIONAL DEFAULT SERVICING CORP;
14   MERSCORP; TIFFANY & BOSCO PA;
     FIRST OPTION MORTGAGE,
15
                          Defendants.
16

17

18   I.    SUMMARY

19         Before the Court are three motions: (1) Plaintiff's Motion to Admit Newly

20   Discovered Evidence and to Consolidate Previously Submitted Exhibits (dkt. no. 56),

21   which Defendants have not opposed; (2) Plaintiff's Motion for Leave to File Newly

22   Discovered Evidence (dkt. no. 96), which Defendants have opposed as procedurally

23   improper; and (3) Defendant First Option Mortgage's ("First Option") Motion to Dismiss

24   (dkt. no. 57).  Defendants U.S. Bank National Association, U.S. Bank Home Mortgage,

25   U.S. Bank Home Mort Outsourcing (collectively "US Bank"), MERSCORP, National

26   Default Servicing Corp ("NDSC"), and Tiffany & Bosco PA ("Tiffany Bosco") have filed

27   joinders to the Motion to Dismiss. (Dkt. nos. 61, 62.) In connection with the Motion to

28   Dismiss, the Court has also considered Plaintiff's opposition (dkt. no. 66), and First

1  Option's reply (dkt. no. 74).  For the reasons discussed below, Plaintiff's Motions are
2  granted, and Defendants' Motion to Dismiss is granted in part, and denied in part.

3  **II.   BACKGROUND**

4        This case arises from Plaintiff's purchase of real property in Clark County, Nevada
5  and the subsequent non-judicial foreclosure proceedings.

6        On June 6, 2013, the Court granted in part and denied in part Defendant First
7  Option's Motion to Dismiss Plaintiff's Complaint. The Court denied dismissal on the Real
8  Estate Settlement Procedures Act ("RESPA") claim and discrimination under the Fair
9  Housing Act ("FHA")/Equal Credit Opportunity Act ("ECOA")/Title II of the Civil Rights Act
10  of 1964 ("Title II")/TILA claim. The Court dismissed with prejudice claims for TILA
11  Disclosures under 15 U.S.C. § 1635, Reg Z Cancellation under 12 C.F.R. § 226, Fair
12  Debt Collection Practices Act ("FDCPA") violations, slander of title/quiet title, and fraud
13  and misrepresentation/unfair trade practices. As to the remaining claims, the Court
14  dismissed them but allowed amendment to cure deficiencies. For the Reg Z-based
15  claims, the Court allowed amendment for Plaintiff to show whether equitable tolling
16  should apply.  For the claims that sounded in fraud, the Court allowed amendment for
17  Plaintiff to allege facts to meet Rule 9(b)'s heightened pleading standard. And for the
18  agency-based claims, the Court allowed amendment for Plaintiff to allege additional facts
19  that signify a legal agency relationship — assent, control, and scope.

20        On June 20, 2013, Plaintiff filed the First Amended Complaint ("FAC") consisting
21  of 129 pages of claims and supporting factual allegations, and 141 pages of attached
22  exhibits. Days later, Plaintiff also filed a Motion to Admit Newly Discovered Evidence,
23  which included an additional 513 pages of exhibits in support of the FAC for the Court's
24  consideration. The FAC alleges 26 claims,[1] including some claims dismissed with
25  prejudice in the previous complaint and several new claims. The FAC alleges the
26  following claims: (1) "lack of standing"; (2) "Defendant MERS cannot be a real party in

27  _____

28      [1]Although numbered to 29, the FAC skips several claims as noted.

2

interest in securitized mortgage"; (3) fraud in concealment; (4) fraud in the inducement; (5) intentional infliction of emotional distress; (6) slander of title; (7) quiet title; (8) declaratory relief; (9) violations of the Fair Credit Reporting Act ("FCRA"); (10-17)[2] violations of Reg Z; (18) RESPA violations; (19) race discrimination under the FHA; (21)[3] race discrimination under Title II/TILA/American's with Disabilities Act of 1990 ("ADA"); (22) race discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII"); (23) negligent supervision; (24) defective title search; (25) fraudulent appraisal; (26) bad faith mediation; (27) common law fraud and injurious falsehood; (28) breach of contract; and (29) breach of fiduciary duty.

## III.   DISCUSSION

### A.   Legal Standard

On a 12(b)(6) motion, the court must determine "whether the complaint's factual allegations, together with all reasonable inferences, state a plausible claim for relief." *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys.*, 637 F.3d 1047, 1054 (9th Cir. 2011) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (*citing Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

When determining the sufficiency of a claim, "[w]e accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the non-moving party[; however, this tenet does not apply to] . . . legal conclusions . . . cast in the form of factual allegations." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (citation and internal quotation marks omitted). "Therefore, conclusory allegations of law

---

[2]The FAC skips 13 and 14. As there is a break in page numbering, these pages may have been omitted from the filing. Regardless, the Court cannot consider nor can Defendants respond to pages that were never filed.

[3]The FAC skips 20. As there is a break in page numbering, these pages may have been omitted from the filing. Again, the Court cannot consider nor can Defendants respond to pages that were never filed.

and unwarranted inferences are insufficient to defeat a motion to dismiss." *Id.* (citation and internal quotation marks omitted); *see also Iqbal*, 556 U.S. at 678 (*quoting Twombly*, 550 U.S. at 555) ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'").

Mindful of the fact that the Supreme Court has "instructed the federal courts to liberally construe the 'inartful pleading' of pro se litigants," *Eldridge v. Block*, 832 F.2d 1132, 1137 (9th Cir. 1987), the Court will view Plaintiff's pleadings with the appropriate degree of leniency.

Normally, "a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion. . . . However, material which is properly submitted as part of the complaint may be considered on a motion to dismiss." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n. 19 (9th Cir. 1990) (citations omitted). Similarly, "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss" without converting the motion to dismiss into a motion for summary judgment. *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 986 (9th Cir. 2002). Otherwise, if the district court considers materials outside of the pleadings, the motion to dismiss is converted into a motion for summary judgment. *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001).

If the court grants a motion to dismiss, it must then decide whether to grant leave to amend. *See Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) ("[A] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.") The court should "freely give" leave to amend when there is no "undue delay, bad faith[,] dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of . . . the amendment, [or] futility of the amendment." Fed. R. Civ. P. 15(a);

*see also Foman v. Davis*, 371 U.S. 178, 182 (1962). Generally, leave to amend is only denied when it is clear that the deficiencies of the complaint cannot be cured by amendment. *See DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992).

### B.      Plaintiff's Violation of the Local Rule Governing Page Limits

As a preliminary matter, Defendants object to Plaintiff's briefs as they all exceed the Local Rules' page limits. Nearly every filing made by Plaintiff exceeds the 30 page limit for motions and oppositions and the   20 page limit for the reply brief. *See* Local Rule 7-4 (establishing length of briefs).   Plaintiff has not sought, nor obtained, prior authorization from the Court to exceed such limits. Moreover, the Court has already strongly cautioned Plaintiff to abide by the Court's Local Rules and that in the future, the Court will not consider any brief that exceeds the page limit without prior authorization. (*See* dkt. no. 52.) Accordingly, for each filing over the page limit, the Court only considers the arguments made within the page limits and disregards any pages over the limits. Again, the Court strongly cautions Plaintiff that proceeding *pro se* does not give Plaintiff free license to disregard this Court's rules of procedure. It is Plaintiff's responsibility to review and comply with the Court's Local Rules. Future violations will result in the Court striking the non-compliant documents and not considering any arguments contained therein.

### C.      Defendants' Motion to Dismiss

As this Court granted Plaintiff leave to amend certain claims, this Court construes Plaintiff's newly added claims as a request for leave to amend. Moreover, Plaintiff seeks to attach significant documentation to his FAC for the Court's consideration. In the interest of judicial economy, the Court considers the documents as if they were attached to the FAC and the Court construes the pleadings under a Rule 12(b)(6) dismissal standard without converting it to a motion for summary judgment.

Several times throughout the FAC, Plaintiff asserts terms commonly seen in foreclosure cases, such as "securitization nullified the Deed of Trust," "extinguished the security," or "irreparably split the note from the deed of trust," (dkt. no. 53 ¶ 110), "tax

credits extinguished the loan," (*Id.* ¶ 124), or that MERS' nominee status makes MERS a sham beneficiary and absolves Plaintiff of any responsibility under the deed of trust. (*See id.*; dkt no. 53-1 ¶ 155). These legal positions have been rejected by the Courts in this jurisdiction and in the Ninth Circuit. Accordingly, these arguments have no merit and are dismissed as a matter of law.

### 1.   Lack of Standing

Although titled "Lack of Standing," Plaintiff's first claim is one for "Statutory or Common Law Wrongful Foreclosure" based on imperfect securitization. Under Nevada law, to succeed on a claim of wrongful foreclosure, under both statutory and common law theories, a plaintiff must show that a lender wrongfully exercised the power of sale and foreclosed upon his or her property. *See Collins v. Union Fed. Sav. & Loan Ass'n*, 662 P.2d 610, 623 (Nev. 1983); *Lane v. Wells Fargo Bank, N.A.*, No. 3:12-cv-00015-RCJ-VPC, 2012 WL 4792914, at *8 (D. Nev. Oct. 8, 2012). However, Plaintiff's Complaint does not allege that there was a sale, which is a necessary element of the claim. In fact, another pending Motion to Stay Foreclosure (dkt. no. 60) belies any allegation that the sale has taken place. As Plaintiff's claim for statutory or common law wrongful foreclosure is not ripe and is insufficiently pled, the claim is dismissed.

### 2.   MERS – Sham Beneficiary

This claim relies exclusively on the failed legal theory that MERS is a sham beneficiary and securitization voids the deed of trust. Essentially, Plaintiff contends "that all transfers of the interests in the home loans within the MERS system are invalid because the designation of MERS as a beneficiary is a sham and the system splits the deed from the note, and, thus, no party is in a position to foreclose." *Cervantes*, 656 F.3d at 1044. The Ninth Circuit has already resoundingly rejected this argument, holding that "[e]ven if MERS were a sham beneficiary, the lenders would still be entitled to repayment of the loans and would be the proper parties to initiate foreclosure after the plaintiff[ ] defaulted on [his] loan[]." *Id.* Moreover, as in *Cervantes*, here, MERSCORP did not initiate the foreclosure process. Therefore, this argument fails.

1    Plaintiff's securitization argument also fails as it implies the securitization

2    practices engaged in by Defendants and the mortgage industry in general were improper

3    and a form of securities fraud. Under well-established Nevada law, securitization of a

4    note does not invalidate the deed of trust or prevent Defendants from being holders in

5    due course. *See Chavez v. Cal. Reconveyance Co.*, No. 2:10-cv-00325-RLH-LRL, 2010

6    WL 2545006 (D. Nev. June 18, 2010).

7    As this claim fails as a matter of law, amendment is futile. This claim is dismissed

8    with prejudice. Plaintiff may not amend this claim.

9
10
11

> **3.    Fraud-Based Claims – fraud in concealment, fraud in the inducement, negligent supervision, defective title search, fraudulent appraisal, common law fraud and injurious falsehood**

12    The Court gave Plaintiff leave to amend his Complaint to comport with Rule 9(b)'s

13    heightened pleading standard for claims sounding in fraud and to allege specific agency

14    relationships to give rise to *respondeat superior* liability. The Court specifically instructed

15    Plaintiff to: (1) give an account of the time, place, or identity of the party making the

16    representation, without lumping Defendants together; and (2) specify which Defendants

17    were involved in the misrepresentation, what they knew, where the alleged collusion took

18    place, or any other information that would allow Defendants to defend against the

19    allegations. (Dkt. no. 52 at 11.) For defective title search and fraudulent appraisal, the

20    Court instructed Plaintiff to allege a legal agency relationship showing assent, control,

21    and scope of the relationship. (Dkt. no. 52 at 12.)

22    Plaintiff has failed to cure the deficiencies of the original Complaint. Plaintiff has

23    again lumped all Defendants together, denying Defendants any meaningful opportunity

24    to refute or defend against the fraud based claims. Plaintiff has not offered a single

25    factual allegation concerning the "who, what, when, or where" of the alleged fraud.

26    Additionally, save a single conclusory statement that "[a]n agency relationship exists

27    between the individual defendants and the corporate defendants," Plaintiff offers nothing

28    ///

7

1 | more to support a legal inference that there was an agency relationship, let alone

2 | assent, control, and scope of the relationship.

3 |     Therefore, Plaintiff's fraud-based claims fail and are dismissed.

4 | **4.    Intentional Infliction of Emotional Distress**

5 |     To assert a claim of intentional infliction of emotional distress, a plaintiff must

6 | prove that: (1) defendant engaged in extreme and outrageous conduct with the intention

7 | of causing emotional distress or acted with reckless disregard for plaintiff's emotional

8 | distress; (2) plaintiff suffered severe or extreme emotional distress as a result; and

9 | (3) defendant's actions were the proximate cause of plaintiff's emotional distress. *See*

10 | *Jordan v. State*, 110 P.3d 30, 52 (Nev. 2005); *Byrd v. Meridian Foreclosure Serv.*, No.

11 | 2:11-CV-00096-KJD-PAL, 2011 WL 1362135, at * 2 (D. Nev. April 8, 2011). Extreme and

12 | outrageous conduct falls "outside all possible bounds of decency and is regarded as

13 | utterly intolerable in a civilized community." *Maduike v. Agency Rent-A-Car*, 953 P.2d 24,

14 | 26 (Nev. 1998).

15 |     In his FAC, Plaintiff avers that Defendants caused him emotional distress by

16 | misrepresenting that they were entitled to exercise the power of sale and attempting to

17 | foreclose on the property. However, Plaintiff does not identify any actions by Defendants

18 | that rise to the level of "extreme and outrageous conduct" "outside all possible bounds of

19 | decency and is utterly intolerable in a civilized community" such that Plaintiff could

20 | plausibly show that he suffered severe emotional distress. Accordingly, the FAC fails to

21 | state a claim for intentional infliction of emotional distress, and the claim is dismissed.

22 | **5.    Slander of Title/Quiet Title**

23 |     These claims have already been dismissed with prejudice. Plaintiff asks the Court

24 | to reconsider the dismissal as it "was dismissed with prejudice as a result of inadvertent

25 | typo (sic) error that was made on the Original complaint." (Dkt. no. 53-3 at 100.) The

26 | Original Complaint contained an allegation that the "loan went into default." (Dkt. no. 1 ¶

27 | ///

28 | ///

8

48.) Now, Plaintiff argues "no default has occurred on his mortgage" because the security instrument was allegedly defective.[4] (Dkt. no. 53-3 at 101.)

Although leave to amend is to be freely given, leave to amend may be denied when "allegation of other facts *consistent with the challenged pleading* could not possibly cure the deficiency." *Abagninin v. AMVAC Chem. Corp.*, 545 F.3d 733, 742 (9th Cir. 2008) (emphasis added). Contrary to Plaintiff's argument, this discrepancy is not a mere typographical error; instead, Plaintiff seeks to change the factual allegations of the original Complaint to avoid dismissal. Here, only directly contradictory facts — that there was no default — would have cured these claims in the original Complaint. Thus, leave to amend was properly denied and the request for reconsideration is denied. These claims continue to be dismissed with prejudice.

### 6. Declaratory Relief

Plaintiff's Declaratory Relief claim is not recognized as a cause of action in Nevada. This is a remedy, not a claim. Accordingly, this "cause of action" is dismissed with prejudice.

### 7. FCRA Violations

Plaintiff's Ninth claim asserts violations of the Fair Credit Reporting Act ("FCRA"). Defendant First Option argues Plaintiff's FCRA claim should be dismissed because Plaintiff has failed to allege that First Option is a "consumer reporting agency," thus First Option is not governed by the FCRA. However, Defendant's argument is legally incorrect. The FCRA does not apply solely to "consumer reporting agencies;" it also applies to "furnishers of information" under 15 U.S.C. § 1682s-2.

Construing Plaintiff's *pro se* complaint liberally, Plaintiff has adequately alleged that Defendants are furnishers of information under the FCRA. Specifically, Plaintiff has alleged that all defendants "qualified as a provider of information to the Credit Reporting

---

[4]Moreover, as already noted in the Court's prior order, this argument relies on rejected legal theories. (*See* dkt. no. 52 at 9.)

Agencies," (Dkt. no. 53-3¶ 429), and that each defendant reported inaccurate, negative information as to Plaintiff to one of more Credit Reporting Agencies." (*Id.* ¶ 430.)

Nevertheless, Plaintiff has still failed to state a claim under the FCRA. Not once in the voluminous pleadings does Plaintiff allege that he disputed the information to the Credit Reporting Agency as required to trigger furnisher duties under the FCRA. *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1162 (9th Cir. 2009). As Plaintiff did not take appropriate action to trigger Defendants' duties under the FCRA, Plaintiff has failed to state a claim under the FCRA and the claim is dismissed.

### 8.    Reg Z Violations

Any claim arising under TILA is limited by a one-year statute of limitations. 15 U.S.C. § 1640(e); *King v. Cal.*, 784 F.2d 910, 915 (9th Cir. 1986) (explaining that the limitations period runs from the date of the transaction). The statute of limitations period begins to run upon execution of the contract because plaintiff possesses all information relevant to the discovery of any non-disclosures at the time the documents of the loan are signed. *See Meyer v. Ameriquest Mortg. Co.*, 342 F.3d 899, 902 (9th Cir. 2003). However, equitable tolling may, "in the appropriate circumstances, suspend the limitations period until the borrower discovers or had reasonable opportunity to discover the fraud or nondisclosures that form the basis of the TILA action." *King*, 784 F.2d at 915.

The Court allowed amendment for Plaintiff to allege facts showing that the equitable tolling doctrine should apply in this case. The FAC alleges Defendants "prevented Plaintiff from learning the total amounts of costs and fees involved," "there was no TILA disclosure of documents to plaintiff," "US BANK N.A. fail[ed] to respond to numerous qualified written requests," and "[Defendants] did not provide any disclosure documents to plaintiff." (Dkt. no. 53-3 ¶ 84–87).

Plaintiff has not demonstrated a basis for equitable tolling of his TILA claims. Even taking Plaintiff's allegation that he was never given any TILA disclosures as true, nothing prevented Plaintiff from comparing the loan contract, the initial disclosures (or

10

1   lack thereof), and TILA's statutory and regulatory requirements. *See Hubbard v. Fidelity*

2   *Fed. Bank*, 91 F.3d 75, 79 (9th Cir.1996) (per curiam) (declining to toll TILA's statute of

3   limitations when "nothing prevented [the mortgagor] from comparing the loan contract,

4   [the lender's] initial disclosures, and TILA's statutory and regulatory requirements"). As

5   Plaintiff's TILA claims flow from his allegation that he did not receive copies of the

6   required disclosures at the time of closing, he could have discovered that violation at the

7   time of closing. *See In re Luciano*, 200 F. App'x. 628, 630 (9th Cir. 2006).

8       Here, the loan agreement in dispute was signed on August 27, 2010. This suit did

9   not commence until July 17, 2012, nearly two (2) years after signing. Plaintiff has offered

10   no facts or argument that he was unable to discover the fraud or nondisclosures at the

11   time of the signing of the loan documents. Thus, Plaintiff's TILA claims are time-barred

12   and the TILA claims are dismissed.[5]

13                     **9.    RESPA Violations**

14       Plaintiff asserts a claim for RESPA violations. Defendant First Option argues

15   Plaintiff's RESPA claim should be dismissed for failure to allege actual damages.

16   RESPA requires the servicer of a federally related mortgage loan to provide a timely

17   written response to inquiries from borrowers regarding the servicing of their loans. 12

18   U.S.C. § 2605(e)(1)(A), (e)(2). If the servicer fails to respond properly to such a request,

19   the statute entitles the borrower to recover actual damages and, if there is a "pattern or

20   practice of noncompliance," statutory damages of up to $1,000. *Id.* § 2605(f) (limiting

21   recovery to "actual damages" where there is no pattern or practice of noncompliance

22   with the requirements of § 2605).

23       The FAC alleges that Plaintiff sent several qualified written requests to US Bank

24   in order to determine if his mortgage were ever assigned, and to ensure consistency in

25

26   ───────────────

27       [5]The FAC realleges claims for rescission and cancellation under Reg Z and TILA.
     However, as explained by the Court in its prior order (dkt. no. 52 at 5), the right of
     rescission does not apply to residential mortgage transactions under either statute.

28   Therefore, those claims fail as a matter of law and are dismissed with prejudice.

1  his mortgage records, but no documents were ever given to Plaintiff. (*See* dkt. no. 53-3

2  ¶¶ 52, 216). Additionally, Plaintiff alleges Defendants improperly computed, collected,

3  and applied Plaintiff's mortgage payments. (*See* dkt. no. 53-3 ¶¶ 90, 477). However,

4  Defendant correctly notes that Plaintiff has failed to allege actual damages as required

5  by the statute. Accordingly, Plaintiff has failed to state a claim and this claim is

6  dismissed.

7              **10.    Discrimination**

8       Plaintiff alleges race and disability discrimination under Title VIII of the Civil Rights

9  Act of 1968 ("Fair Housing Act" or "FHA")),[6] Americans with Disabilities Act ("ADA"), Title

10 II of the Civil Rights Acts of 1964, and TILA[7].

11      The FHA broadly prohibits discrimination in housing, including on the basis of

12 race and disability. 42 U.S.C. §§ 3601–05. Title III of the ADA prohibits discrimination on

13 the basis of a disability in any place of public accommodation. 42 U.S.C. § 12182(a).

14 Likewise, Title II of the Civil Rights Act of 1964 prohibits discrimination in places of public

15 accommodation, i.e. establishments that serve the public, such as hotels, restaurants,

16 and movie theaters. *See Clegg v. Cult Awareness Network*, 18 F.3d 752, 753–54 (9th

17 Cir. 1994). However, the ADA does not recognize lenders of credit as places of public

18 accommodations, *see* 42 U.S.C. § 12181(f), and no Court has recognized extension of

19 Title II liability to providers of credit or lenders. Accordingly, any disability or race

20 discrimination claim in administering home loans is more appropriately brought under the

21

22

23      [6]Plaintiff treats the Fair Housing Act, Fair Housing and Equal Opportunity Act, and
24 Title VIII as three separate bases for liability. However, the Fair Housing Act is merely
   the short title of Title VIII, which is administered and enforced by the Department of
25 Housing and Urban Development's Office of Fair Housing and Equal Opportunity. *See*
   U.S. Dept. of Hous. & Urban Dev., *About FHEO*, http://portal.hud.gov/hudportal/HUD?
26 src=/program_offices/fair_housing_equal_opp/aboutfheo/aboutfheo.

27      [7]As already discussed above, Plaintiff's TILA claims are time-barred, and
   therefore, Plaintiff's race discrimination claim as it relates to TILA is accordingly also
28 dismissed.

1   FHA. Thus, the Court dismisses the discrimination claim under the ADA, Title II of the

2   Civil Rights Act, and TILA, and instead construes the claim under the FHA.

3          "[T]he vitality of a fair housing complaint should be judged by the statutory

4   elements of an FHA claim rather than the structure of the prima facie case." *Gilligan v.*

5   *Jamco Dev. Corp.*, 108 F.3d 246, 250 (9th Cir. 1997). The FHA provides a private right

6   of action for an "aggrieved person" subjected to "an alleged discriminatory housing

7   practice." 42 U.S.C. § 3613(a)(1)(A).

8          Here, Defendants seek to impose a higher pleading standard than required by the

9   Federal Rules of Civil Procedure by forcing Plaintiff to make out a prima facie case of

10  discrimination. However, the burdens of proof in a case do not dictate the required

11  elements of a complaint. *See Gilligan*, 108 F.3d at 249. Here, Plaintiff has adequately

12  alleged that he is an "aggrieved person" under the statutory definition because he

13  "claims to have been injured by a discriminatory housing practice," namely race and

14  disability discrimination. 42 U.S.C. § 3602(i). The definition of "discriminatory housing

15  practice" includes acts unlawful under 42 U.S.C. § 3605, such as those related to

16  residential real estate-related transactions. Thus, Plaintiff's complaint is adequate to

17  state a claim for relief under the FHA and the motion is denied as to this claim.

18              **11.   Bad Faith Mediation**

19         The Court had previously allowed Plaintiff to amend the bad faith mediation claim.

20  However, Plaintiff has failed to specifically identify which Defendant committed the

21  alleged acts of misconduct, as required by the Court's prior order. Because the FAC still

22  does not adequately connect particular Defendants to their actions, and has thus failed

23  to remedy the prior deficiencies identified by the Court, this claim is dismissed.

24              **12.   Breach of Contract**

25         A plaintiff in a breach of contract action must "show (1) the existence of a valid

26  contract, (2) a breach by the defendant, and (3) damage as a result of the breach." *Saini*

27  *v. Int'l Game Tech.*, 434 F. Supp. 2d 913, 920–21 (D. Nev. 2006) (*citing Richardson v.*

28  *Jones*, 1 Nev. 405, 405 (1865)).

Here, Plaintiff has adequately alleged (1) the existence of a valid contract, specifically a mortgage contract with accompanying note and deed of trust, (2) several breaches by Defendants, including misapplication of payments, flawed acceleration, and failure to provide certain notices, and (3) resultant damages. Defendant First Option disingenuously isolates a single paragraph of the FAC to argue any alleged breaches occurred outside of the contract. Moreover, Defendant misstates, or at best over-simplifies, First Option's duty as a duty to merely "lend Plaintiff money for a residential mortgage." (Dkt. no. 57 at 15.) However, the FAC refers several times to the mortgage documents, including the Deed of Trust and Note. Even a cursory review of these documents shows First Option's duties relating to application of payments, acceleration of debt, and notices to be delivered. Plaintiff has alleged breaches of all these contractual duties and more. Plaintiff has adequately stated a claim for breach of contract and the motion is denied as to this claim.

### 13. Breach of Fiduciary Duty

Plaintiff's claim for breach of fiduciary duty is a mislabeled suitability claim. However, suitability is not a recognized cause of action in the context of lender-borrower relationships in Nevada. *Larson v. Homecomings Financial, LLC*, 680 F. Supp. 2d 1230, 1234 (D. Nev. 2009). Even if the claim is in fact a breach of fiduciary duty claim, courts have repeatedly held that a lender owes no fiduciary duties to a borrower absent exceptional circumstances, such as when a special relationship exists between the two parties. *See Yerington Ford, Inc. v. Gen. Motors Acceptance Corp.*, 359 F. Supp. 2d 1075, 1090 (D. Nev. 2004) (stating "the Court is satisfied that the Nevada Supreme Court would hold that an arms-length lender-borrower relationship is not fiduciary in nature, absent exceptional circumstances"), *aff'd in relevant part by Giles v. Gen. Motors Acceptance Corp.*, 494 F.3d 865 (9th Cir. 2007).

Here, Plaintiff has not alleged facts that could give rise to a special relationship or exceptional circumstances. Thus, the Court dismisses Plaintiff's breach of fiduciary duty claim for failure to state a valid claim.

## IV.    CONCLUSION

It is therefore ordered that Plaintiff's Motion to Admit Newly Discovered Evidence and to Consolidate Previously Submitted Exhibits (dkt. no. 56) is granted.

It is further ordered that Plaintiff's Motion for Leave to File Newly Discovered Evidence (dkt. no. 96) is granted.

It is further ordered that Defendant First Option Mortgage's Motion to Dismiss (dkt. no. 57) is granted in part and denied in part, as follows:

(1) granted as to claims 2, 6, 7, 8, 21, and 22, which are dismissed with prejudice. Plaintiff may not amend these claims.

(2) granted as to claims 1, 3, 4, 5, 9, 10, 11, 12, 15, 16, 17, 18, 23, 24, 25, 26, 27, and 29, which are dismissed without prejudice.

(3) denied as to claims 19 and 28.

DATED THIS 17th day of December 2013.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE

15